## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIGGIN' YOUR DOG, LLC, | |
| *Plaintiff*, | Case No. 1:21-cv-8667-JPC-RWL |
| v. | |
| THE PETLAB CO. and AMPLIFY LTD, | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT
## <u>JUDGMENT AND PERMANENT INJUNCTION</u>

Plaintiff Diggin' Your Dog, LLC ("Diggin' Your Dog"), through its undersigned counsel, submits this Memorandum of Law in Support of its Motion for Default Judgment and Permanent Injunction against Defendants The Petlab Co. ("Petlab") and Amplify Ltd ("Amplify" and together with Petlab, "Defendants"), pursuant to Fed. R. Civ. P. 55(b)(2) and 65(d), Local Rule 55.2(b), and the Court's Individual Rule 3(d).

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND......................................... 2

    A.  DIGGIN' YOUR DOG'S RIGHTS IN THE FIRM UP MARK ........................... 2

    B.  DEFENDANTS' INFRINGING CONDUCT ........................................... 3

    C.  DEFENDANTS BOTH PARTICIPATE IN THE INFRINGING
       CONDUCT IN NEW YORK............................................................. 5

    D.  DEFENDANTS ARE FULLY INFORMED OF THIS LITIGATION
       AND HAVE INTENTIONALLY CONTINUED THEIR INFRINGING
       ACTIVITIES........................................................................... 5

III. PERSONAL JURISDICTION................................................................ 7

IV. LEGAL STANDARD FOR DEFAULT JUDGMENT ..................................... 8

V.  ARGUMENT ................................................................................. 8

    A.  DIGGIN' YOUR DOG IS ENTITLED TO JUDGMENT ON ITS
       FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR
       COMPETITION CLAIMS ............................................................. 8

         1.  Diggin' Your Dog Is Likely to Succeed on its Trademark
            Infringement and Unfair Competition Claims ........................... 8

             a.  The FIRM UP Mark is Valid and Entitled to Protection .............. 9

             b.  Defendants' Use of the Infringing Mark in Connection with
                the Sale and/or Advertising of Identical Goods is Likely to
                Cause Consumer Confusion........................................................ 9

             c.  The FIRM UP Mark is Strong and Distinctive ........................... 10

             d.  The Infringing Mark is Identical to the FIRM UP Mark and
                is Use in Connection with the Same Goods................................ 11

             e.  Defendants' FIRM UP-Branded Goods Directly Compete
                with Diggin' Your Dog's FIRM UP-Branded Products .............. 12

             f.  Actual Consumer Confusion May Be Inferred ........................... 13

             g.  Defendants Acted in Bad Faith.................................................... 13

             h.  Defendants' Goods are of Inferior Quality................................. 14

             i.  The Degree of Consumer Sophistication .................................... 15

         2.  Defendants Acted Willfully ................................................. 15

    B.  DIGGING' YOUR DOG IS ENTITLED TO JUDGMENT ON ITS
       STATE LAW CLAIMS ............................................................... 17

i

# TABLE OF AUTHORITIES
(continued)

**Page**

C.    DIGGIN' YOUR DOG IS ENTITLED TO A PERMANENT INJUNCTION ........................................................................... 18

D.    DIGGIN' YOUR DOG IS ENTITLED TO RECOVER DEFENDANTS' PROFITS ................................................................................ 20

     1.    A Defendant's Default Alone Is Justifies A Trebled Profit Award ......... 20

     2.    A Defendant's Admission Of Sales Figures Suffices To Calculate A Profit Award ........................................................................ 21

     3.    An Award Of $448,000, Trebled to $1,344,000, Is Appropriate Here ................................................................................... 23

VI.    CONCLUSION ......................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Am. Honda Motor Co., Inc. v. Two Wheel Corp.*,
   918 F.2d 1060 (2d Cir. 1990) ................................................... 21

*Aris Isotoner Inc. v. Dong Jin Trading Co.*,
   1989 WL 236526 (S.D.N.Y. Sept.14, 1989) ................................... 21, 22

*Artemide Inc. v. Spero Elec. Corp.*,
   09-cv-1110 (DRH) (ARL), 2010 U.S. Dist. LEXIS 136870 (E.D.N.Y. Nov. 23, 2010) .......... 19

*Baker v. Parris*,
   777 F.Supp. 299 (S.D.N.Y.1991) ................................................ 17

*Cadbury Beverages Inc. v. Cott Corp.*,
   73 F.3d 474 (2d Cir. 1996) ...................................................... 12

*Centaur Commc'ns v. A/S/M Commc'ns*,
   830 F.2d 1217 (2d Cir.1987) ..................................................... 14

*Century 21 Real Estate LLC v. Paramount Home Sales, Inc.*,
   2007 WL 2403397 (E.D.N.Y. Aug. 20, 2007) .................................. 22

*Coach, Inc. v. Melendez*,
   No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842 (S.D.N.Y. Sep. 2, 2011)......... 16

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ..................................................... 8

*Chloe v. Zarafshan*,
   2009 WL 2956827 (S.D.N.Y. Sept. 15, 2009) ............................... 22, 23, 24

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .............................................................. 7

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .............................................................. 18

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993) ........................................................ 8

*Experience Hendrix, L.L.C. v. Pitsicalis*,
   2020 WL 3564485 (S.D.N.Y. July 1, 2020)................................... 20, 22

*Fila U.S.A., Inc. v. Run Trading Corp.*,
   No. 95 CIV. 7144 (PKL), 1996 U.S. Dist. LEXIS 6893 (S.D.N.Y. May 21, 1996) ................ 13

iii

## TABLE OF AUTHORITIES
(continued)

**Page**

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963) ................................................................................. 13

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
   111 F.3d 993 (2d Cir. 1997) .................................................................................. 12

*Gabriel Brothers, Inc. v. Effy Jewelers Corp.*,
   2019 WL 1512800 (S.D.N.Y. Apr. 8, 2019) ......................................................... 23

*George Basch Co., Inc. v. Blue Coral, Inc.*,
   968 F.2d 1532 (2d Cir. 1992) ................................................................................ 21

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
   991 F.2d 1072 (2d. 1993) ......................................................................... 9, 10, 11

*Gucci America, Inc. v. Action Activewear, Inc.*,
   759 F. Supp. 1060 (S.D.N.Y. 1991) ...................................................................... 13

*Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.*,
   240 U.S. 2 (1916) .................................................................................................. 21

*Harris v. Fairweather*, 11-cv-2152 (PKC) (AJP),
   2012 U.S. Dist. LEXIS 128409 (S.D.N.Y. Sep. 10, 2012) .................................... 18

*Hiram Ricker & Sons v. Students Int'l Meditation Soc.*,
   501 F.2d 550 (1st Cir. 1974) ................................................................................. 23

*IBM v. BGC Partners, Inc.*,
   2013 WL 1775367 (S.D.N.Y. Apr. 25, 2013) ....................................................... 24

*International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*
   890 F.3d 749 (2d Cir. 1996) .................................................................................. 14

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
   58 F.3d 27 (2d Cir.1995) ....................................................................................... 17

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*,
   831 F. Supp. 123 (S.D.N.Y. 1993) ........................................................................ 13

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*,
   495 F.2d 1265, 181 U.S.P.Q. 545 (2d Cir. 1974) ................................................... 9

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
   799 F.2d 867 (2d Cir. 1986) .................................................................................. 11

## TABLE OF AUTHORITIES
(continued)

Page

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
    765 F.2d 966 (2d Cir.1985) ............................................................................ 22

*Lyons P'Ship, L.P. v. AAA Entm't Inc.*,
    1999 WL 1095608 (S.D.N.Y. Dec. 3, 1999) ..................................................... 20

*Melwani v. Nature Republic Int'l LLC*,
    2019 WL 1582087 (S.D.N.Y. Mar. 27, 2019) ................................................... 21

*Montblanc Simplo GMBH v. Colibri Corp.*,
    692 F. Supp. 2d 245 (E.D.N.Y. 2010) .............................................................. 19

*N.A.S. Imp. Corp. v. Chenson Enters.*,
    968 F.2d 250 (2d Cir. 1992) ............................................................................ 16

*N.Y. State Soc'y of CPA's v. Eric Louis Assocs.*,
    79 F. Supp. 2d 331 (S.D.N.Y. 1999) ................................................................ 14

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) .............................................................. 19

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*,
    996 F.2d 577, 585 (2d Cir.1993) ...................................................................... 14

*Pearson Educ., Inc. v. Vegara*,
    No. 09 Civ. 6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010) ... 19

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*,
    70 U.S.P.Q. 1592, 2004 WL 896952 (E.D.N.Y. 2004) ...................................... 17

*Phat Fashions LLC v. Blue Max Corp.*,
    2005 WL 1221838 (S.D.N.Y. May 2, 2005) ...................................................... 23

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961) ............................................................................ 10

*Polymer Technology Corp. v. Mimran*,
    975 F.2d 58 (2d Cir. 1992) .............................................................................. 15

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*,
    778 F. Supp. 2d 261 (E.D.N.Y. 2011) .............................................................. 15

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    140 S. Ct. 1492 (2020) .................................................................................... 20

## TABLE OF AUTHORITIES
### (continued)

Page

*Star Indus. v. Bacardi & Co.*,
   412 F.3d 373 (2d Cir. 2005) ....................................................................................... 12

*Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*,
   954 F. Supp. 2d 145 (E.D.N.Y. 2013) ........................................................................ 21

*Stuart v. Collins*,
   489 F. Supp. 827 (S.D.N.Y. 1980) ........................................................................ 14, 16

*TCPIP Holding Co. v. Haar Communs. Inc.*,
   244 F.3d 88 (2d Cir. 2001) ......................................................................................... 10

*Tiffany (NJ) Inc. v. Luban*,
   282 F. Supp. 2d 123 (S.D.N.Y. 2003) ......................................................................... 16

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) ...................................................................................... 16

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
   800 F. Supp. 2d 515, 101 U.S.P.Q.2d 1487 (S.D.N.Y. 2011) ............................... 17, 19

*Virgin Enters., Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003) ..................................................................................... 9, 15

*Yousef v. Al Jazeera Media Network*,
   2018 WL 1665239 (S.D.N.Y. Mar. 22, 2018) .............................................................. 8

**Statutes**

15 U.S.C. § 1116(a) .......................................................................................................... 18

15 U.S.C. § 1117(a) ............................................................................................... 20, 21, 25

15 U.S.C. § 1125 ................................................................................................................. 9

15 U.S.C. 1125(a) ............................................................................................................... 9

15 U.S.C. § 1072 ................................................................................................................. 3

N.Y. Gen. Bus. Law § 133 ................................................................................... 17, 18, 25

N.Y. Gen. Bus. Law § 349 ................................................................................................ 25

N.Y. Gen. Bus. Law § 349(h) ..................................................................................... 17, 18

N.Y. Gen. Bus. Law § 360-l .................................................................................. 9, 17, 18, 25

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Rules**

Fed. R. Civ. P. 55(a) ................................................................................................ 8

Fed. R. Civ. P. 55(b) ............................................................................................. 1, 8

Fed. R. Civ. P. 65(d) ............................................................................................... 1

N.Y. C.P.L.R. § 302(a) ............................................................................................ 8

N.Y. C.P.L.R. § 301 ................................................................................................. 7

**Other Authorities**

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.07 (2d ed. 2008)) .............................................................................................................. 24

I.      **PRELIMINARY STATEMENT**

Despite having received actual notice directly from Diggin' Your Dog regarding its rights in the trademark FIRM UP and the status of this lawsuit, Defendants have failed to appear and continued to use the FIRM UP mark in violation of the Lanham Act and applicable New York state law.  Diggin' Your Dog is an industry leader in the manufacture of dietary supplements and health products for pets.  It has used the trademark FIRM UP in connection with pet digestive support products since 2010.  In 2021, Diggin' Your Dog sought to enforce its rights through this action after it discovered that Defendants were using the identical mark FIRM UP in connection with competing pet digestive support products that customers claimed were harming their pets. Defendants were given ample opportunity to not only answer the Complaint, but also to cease using the Infringing Mark and avoid this dispute altogether.  Instead, Defendants have decided to continue flouting federal and state trademark and unfair competition laws and ignore this action entirely.

Diggin' Your Dog therefore seeks entry of default judgment in this trademark infringement action against Defendants.  As explained in detail below, default judgment is appropriate here on Diggin' Your Dog's federal and state trademark and unfair competition claims given Defendants' failure to appear and the merits of the claims.  In accordance with the Complaint and applicable law, Diggin' Your Dog seeks the Court's determinations that Defendants have violated Diggin' Your Dog's rights.  Diggin' Your Dog seeks relief in the form of a permanent injunction against further use of the infringing trademark, and monetary damages consisting of Defendant's profits calculated from Defendants' own admissions regarding sales figures.  Diggin' Your Dog will seek fees and costs through a separate motion at the conclusion of these default proceedings.

1

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   DIGGIN' YOUR DOG'S RIGHTS IN THE FIRM UP MARK

Founded in 2010, Diggin' Your Dog is an industry-leading manufacturer of dietary supplements and health products for pets.  (Dkt. 1 ¶¶ 10-11; Love Decl. ¶ 3.)  Diggin' Your Dog's products are known for being 100% sourced in the United States, and are comprised of premium ingredients that are grown, harvested, and packaged at the company's Nevada-based facilities. (Dkt. 1 ¶ 12; Love Decl. ¶ 4.)  Since its inception, Diggin' Your Dog has continuously used the trademark FIRM UP (the "FIRM UP Mark") in connection with its pet products throughout the United States and specifically in New York.  (Dkt. 1 ¶ 13; Love Decl. ¶ 5.)

Diggin' Your Dog's sales and marketing efforts are extensive.  Diggin' Your Dog currently has eleven distributors for its FIRM UP-branded products, which are available for purchase in thousands of brick-and-mortar retail locations and their online counterparts, including without limitation: Natural-Pawz, Only Natural Pet, Natural Pet Warehouse, Loyal Companion, Urban Dogg, and My Hooves & Paws.  (Dkt. 1 ¶ 21; Love Decl. ¶ 6.)  Diggin' Your Dog also sells and promotes its FIRM UP-branded products online to customers throughout the United States (including New York), including through its own website located at www.digginyourdog.com and through third-party retailers such as Amazon.com and Chewy's website.  (Dkt. 1 ¶¶ 19-20, Exs. C-D; Love Decl. ¶ 7.)  Since 2010, Diggin' Your Dog has spent approximately $500,000 promoting its FIRM UP-branded products, and its total sales for these products was approximately $1,675,000 from 2010-2014 and in excess of $9,300,00 from 2015 to the present.  (Love Decl. ¶ 8.)

As a result of Diggin' Your Dog's longstanding and extensive use and enforcement of its rights in the FIRM UP Mark, consumers have come to recognize and associate the FIRM UP Mark with Diggin' Your Dog's top-quality pet products, namely digestive support for stool consistency. (Dkt. 1 ¶¶ 17 & 24; Love Decl. ¶ 9.)  Diggin' Your Dog has spent considerable time and expense

2

building its brand and developing goodwill in the FIRM UP Mark, and consequently, the digestive aid product sold under the FIRM UP Mark has become Diggin' Your Dog's best-selling product. (Dkt. 1 ¶¶ 22-23; Love Decl. ¶ 10.)  Diggin' Your Dog's goods prominently display the FIRM UP Mark with the "TM" symbol, conveying Diggin' Your Dog's trademark rights to all third parties. (Dkt. 1 ¶ 16, Ex. C; Love Decl. ¶ 11.)

In addition to the company's common law rights, Diggin' Your Dog owns United States Application Serial No. 90/807,650 (the "'650 Application") for the FIRM UP Mark, covering "[a]nimal feed additives for use as nutritional supplements for promoting digestion and stool consistency; [d]ietary fiber to aid digestion; [and] [d]ietary supplements for pets," among other things, in International Class 5, as well as various pet food products in International Class 31. (Dkt. 1 Ex. B; Rodrigues Decl. ¶ 3.)  The '650 Application serves as nationwide constructive notice of Diggin' Your Dog's rights in the FIRM UP Mark.  (Dkt. 1 ¶ 15); *see* 15 U.S.C. § 1072.  The '650 Application was recently published on the U.S. Patent & Trademark Office's ("USPTO") Official Gazette on January 4, 2022, and following the thirty-day publication window wherein no third parties opposed registration of the FIRM UP Mark, the '650 Application is currently scheduled to be registered, thereby confirming Diggin' Your Dog's nationwide exclusivity in the FIRM UP Mark for the listed goods.  (Rodrigues Decl. ¶ 4; Ex. A.)

**B.    DEFENDANTS' INFRINGING CONDUCT**

Defendants are direct competitors of Diggin' Your Dog, selling the same dietary and nutritional pet supplements. (Dkt. 1 ¶ 26.)  Since at least as early as June 2021, Defendants have marketed, advertised, and sold pet supplements for stool consistency using the same wording "FIRM UP" (the "Infringing Mark"), which is identical to the FIRM UP Mark in appearance, sound, meaning, and overall commercial impression.  (Dkt. 1 ¶¶ 28 & 33-34.)  Defendants market and sell their pet products, which prominently display the Infringing Mark, on their own online

3

retail website.  (Dkt. 1 ¶¶ 29-30, Exs. E-F.)  Defendants also market and sell their pet supplements through third-party retailers, including Chewy's website.  (Dkt. 1 ¶ 32, Ex. G.)  Defendant Amplify distributes the pet products on behalf of Defendant Petlab. (Dkt. 1 ¶ 31, Ex. E.)

Defendants market and sell their pet products under the Infringing Mark to the same class and types of consumers as Diggin' Your Dog—pet owners.  (Dkt. 1 ¶ 36.)  There is no question that Defendants have profited from the infringement.  Through counsel, Defendants have admitted to approximately 8,000 sales of the infringing product.  (Rodrigues Decl. ¶ 22, Ex. H.)  Although counsel later attempted to disavow the 8,000 unit figure, claiming only 800 units were sold by virtue of an alleged typo in her earlier email that somehow went unnoticed until now, the claim is not credible given that (i) counsel included a comma in the original communication; (ii) the alleged typo was only discovered/asserted following notice that default proceedings had commenced; and (iii) Defendants refuse to appear in this matter and subject themselves to discovery.  (Rodrigues Decl. ¶ 27, Ex. H.)

Defendants' use of the Infringing Mark is likely to create consumer confusion, mistake or deception as to the origin, sponsorship or approval of the parties' respective products, which in turn, is likely to damage Diggin' Your Dog's goodwill and business reputation.  (Dkt. 1 ¶ 37; Love Decl. ¶ 12.)  Additionally, Defendants' use of the Infringing Mark is likely to damage Diggin' Your Dog's goodwill and business reputation because Defendants' customers believe Defendants' products are causing harm to pets.  (Dkt. 1 ¶ 38; Love Decl. ¶ 13.)  For example, customers who bought the Defendants' products on Amazon.com posted reviews stating: "Made my dog so sick"; "Almost killed my dog!"; "This gave my dog serious intestinal issues"; "Not working at all"; "My dog is projectile vomiting after 2 doses"; "Predatory Sales. Lack of customer service"; "DO NOT GIVE THESE TO YOUR DOG"; and "PETLAB IS A VERY DANGEROUS COMPANY."  (Dkt.

4

1 ¶ 38, Ex. H.)  Diggin' Your Dog has never authorized Defendants to use any FIRM UP mark, and Defendants adopted the Infringing Mark without Diggin' Your Dog's consent.  (Dkt. 1 ¶ 40.)

### C.   DEFENDANTS BOTH PARTICIPATE IN THE INFRINGING CONDUCT IN NEW YORK

Defendants work together in New York to advertise, market, distribute, and sell their infringing products to consumers in New York.  Petlab's website acknowledges that Amplify "and affiliated companies. . . own and operate The Petlab Co. and the website www.thepetlab.com," which markets and sells the infringing products.  (Dkt. 1 ¶ 5, Ex. A.)  Defendants admit that they both operate in New York City, and evidence confirms they are also headquartered and/or have principal offices in New York.  Petlab's website lists New York addresses for both Petlab and Amplify.  (Rodrigues Decl. ¶ 6, Ex. B.)  Consistent with these claims, Amplify's foreign business registration in Colorado list a New York address as its "principal office," (Rodrigues Decl. ¶ 7, Ex. C), and Amplify has acknowledged in its executives' attempts to resist jurisdiction in California that its employees are located in New York (Rodrigues Decl. ¶ 7, Ex. D at 14:16-19.)  Finally, Diggin' Your Dog has confirmed that Defendants deliver their FIRM UP products to New York customers.  (Rodrigues Decl. ¶ 8, Ex. E.)

### D.   DEFENDANTS ARE FULLY INFORMED OF THIS LITIGATION AND HAVE INTENTIONALLY CONTINUED THEIR INFRINGING ACTIVITIES

On July 6, 2021, Diggin' Your Dog, sent a cease and desist letter through its counsel to Defendants, alerting them of Diggin' Your Dog's trademark rights in the FIRM UP Mark and requesting that Defendants immediately cease any and all use of the Infringing Mark, among other things.  (Dkt. 1 ¶ 41; Rodrigues Decl. ¶ 9, Ex. F.)  Despite actual knowledge of Diggin' Your Dog's trademark rights and demands, Defendants continued to willfully infringe the FIRM UP Mark and ignore the July 6 cease and desist letter.  (Dkt. 1 ¶ 42; Rodrigues Decl. ¶ 10.)

On August 27, Diggin' Your Dog sent a second cease and desist letter through its counsel to Defendants, reiterating the contents of the July 6 letter, namely, Diggin' Your Dog's demand that Defendants immediately cease any and all use of the Infringing Mark. (Rodrigues Decl. ¶ 11.) Once again, Defendants ignored the follow-up letter and demands. (Rodrigues Decl. ¶ 12.)

Accordingly, Diggin' Your Dog commenced this action on October 22, 2021. (Dkt. 1; Rodrigues Decl. ¶ 13.) Amplify was served with the Complaint on October 28, 2021, and Petlab was served on November 8, 2021, making their answers due by November 18, 2021 and November 29, 2021, respectively. (Rodrigues Decl. ¶ 14; Reuben Decl. ¶¶ 5-6.)

On November 12, 2021, Petlab finally contacted Diggin' Your Dog via email through its counsel to request a telephone conference to discuss this case. (Rodrigues Decl. ¶ 15.) Thereafter, Diggin' Your Dog and Petlab held a conference on November 18, 2021. (Rodrigues Decl. ¶ 16.) On November 30, 2021—*after* the Defendants both failed to answer or otherwise respond to the Complaint by their respective deadlines—Petlab contacted Diggin' Your Dog to request an extension of time. (Rodrigues Decl. ¶ 17, Ex. H.) Diggin' Your Dog agreed to the request and the following day filed a letter with the Court on Petlab's behalf, requesting an extension of thirty days. (Dkt. 20; Rodrigues Decl. ¶ 18.) Two days later, the Court granted the extension request, making Petlab's new deadline to answer December 29, 2021. (Dkt. 21; Rodrigues Decl. ¶ 19.) On December 10, 2021, Diggin' Your Dog reminded Petlab that an answer or response to the Complaint was due by December 29, 2021. (Rodrigues Decl. ¶ 20, Ex. H.) On December 16, 2021, Petlab's counsel informed Diggin' Your Dog that she was conferring with her client and would revert back "as soon as possible." (Rodrigues Decl. ¶ 21, Ex. H.)

At 5:22pm on December 29, 2021—the day Petlab's answer was due—Petlab contacted Diggin' Your Dog to request an additional extension of time to answer or otherwise respond to the Complaint. (Rodrigues Decl. ¶ 22, Ex. H.) Petlab did not respond to the Complaint by the

December 29 extended deadline.  On January 6, 2022, through counsel, Diggin' Your Dog informed Petlab that while it would not oppose further requests for an extension of time to answer or otherwise respond to the Complaint, Diggin' Your Dog would not request such an extension on behalf of Petlab because: (a) the request would violate the Court's individual rules of practice; and (b) Diggin' Your Dog lacked personal knowledge of any factual circumstances that may or may not have justified the request.  (Rodrigues Decl. ¶ 24, Ex. H.)  Diggin' Your Dog subsequently filed a status update letter explaining the circumstances (Dkt. 29), which was simultaneously transmitted to counsel for Petlab.  (Rodrigues Decl. ¶¶ 24-26, Ex. I.)

In light of Defendants' failure to answer, respond, or make an appearance in this action, the Clerk of Court issued a certificate of default against Amplify on January 12, 2022, and against Petlab on January 26, 2022.  (Dkt. 28, 32.)  On January 27, 2022, the Court issued an Order directing Diggin' Your Dog to move for default judgment as to Defendants in accordance with Local Civil Rule 55.2 and 3.D of the Court's Individual Rules and Practices for Civil Cases or show cause why this case should not be dismissed for failure to prosecute.  (Dkt. 33.)  On January 30, 2022, Diggin' Your Dog timely served a copy of that Order on the Defaulting Defendants prior to filing the instant motion for default judgment.  (Dkt. 34.)

## III.   PERSONAL JURISDICTION

New York's long-arm statute provides that a court may exercise personal jurisdiction in two ways.  A court may exercise "general jurisdiction" over an entity that is headquartered or incorporated in, or maintains its principal place of business, in the forum and is therefore "at home."  *See* N.Y. C.P.L.R. § 301; *Daimler AG v. Bauman*, 571 U.S. 117, 137-139 (2014).  Alternatively, a court may exercise "specific jurisdiction" over any non-domiciliary who "(1) transacts any business within the state . . .;" "(2) commits a tortious act within the state . . .;" or "(3) commits a tortious act without the state causing injury to person or property within the state

. . . if he [ ] regularly does or solicits business, or engages in any other persistent course of conduct. . . ."  N.Y. C.P.L.R. § 302(a).

Here, the Court need not reach the specific jurisdiction analysis (although the exercise of specific personal jurisdiction would also be appropriate) because general jurisdiction exists. Defendants hold themselves out as headquartered and/or having their principal places of business at New York offices with New York employees, through their website, foreign business registrations, and statements made in unrelated proceedings.  *Yousef v. Al Jazeera Media Network*, No. 16-CV-6416 (CM), 2018 WL 1665239, at *13 (S.D.N.Y. Mar. 22, 2018) (relying in part on defendant's admissions through court filings that it was headquartered in New York in finding that defendant transacted business in New York).  Defendants are therefore "at home" in New York and subject to personal jurisdiction in this District.

## IV.   LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55(b), the Court may issue a default judgment following the entry of default by the court clerk under Rule 55(a). "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint."  *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011). Ultimately, the entry of a default judgment is entrusted to the sound discretion of the district court. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

## V.   ARGUMENT

### A.   DIGGIN' YOUR DOG IS ENTITLED TO JUDGMENT ON ITS FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS

#### 1.   Diggin' Your Dog Is Likely to Succeed on its Trademark Infringement and Unfair Competition Claims

In order to establish a likelihood of success on trademark infringement and unfair competition, a plaintiff must show: (1) that its mark is valid and entitled to protection, and (2) that

defendant's use of plaintiff's marks is likely to cause consumer confusion.  15 U.S.C. 1125(a); *see Virgin Enters., Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d. 1993)).

a.     The FIRM UP Mark is Valid and Entitled to Protection

It is well established that trademark rights stem from use—that is, appropriation of the mark and subsequent use in commerce.  *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271, 181 U.S.P.Q. 545 (2d Cir. 1974) ("The user who first appropriates the mark obtains on [sic] enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially[.]") (citations omitted).

Diggin' Your Dog has been using the FIRM UP Mark in New York and interstate commerce in connection with the sale of pet supplements since at least as early as November 1, 2010.  Diggin' Your Dog has never ceased using the FIRM UP Mark, and as a consequence, has maintained common law trademark rights in the FIRM UP Mark for over a decade.  As the senior user, Diggin' Your Dog's common law trademark rights are superior to any rights the Defendants may claim in the Infringing Mark.  Consequently, Diggin' Your Dog's common law trademark rights are well established as recognized by § 43 of the Lanham Act and New York state law.  *See* 15 U.S.C. § 1125; New York Gen. Bus. Law § 360-l.  Accordingly, the FIRM UP Mark is valid and entitled to protection under both the Lanham Act and New York state law.

b.     Defendants' Use of the Infringing Mark in Connection with the Sale and/or Advertising of Identical Goods is Likely to Cause Consumer Confusion

In determining whether there is a likelihood of confusion, courts within the Second Circuit apply the eight-factor balancing test set forth in the seminal *Polaroid* case: (1) the strength of the plaintiff's mark; (2) the similarity between the two marks; (3) the proximity of the products sold

9

under the marks; (4) where the goods are different, the likelihood that the senior user will bridge the gap by selling the products being sold by defendants; (5) the existence of actual confusion among consumers; (6) whether defendant adopted the mark in good faith; (7) the quality of defendant's product; and (8) the sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961). Here, a straightforward application of the *Polaroid* factors clearly demonstrates that a likelihood of confusion exists.

c.      The FIRM UP Mark is Strong and Distinctive

In determining the strength of a mark, courts look to: "(1) inherent strength, resulting from the mark's degree of inherent distinctiveness, usually measured on the ladder ranging from unprotectable generic marks to arbitrary, fanciful marks that enjoy the broadest protection, and (2) acquired strength, reflecting the degree of consumer recognition the mark has achieved." *TCPIP Holding Co. v. Haar Communs. Inc.*, 244 F.3d 88, 100 (2d Cir. 2001). In the middle of the ladder lies descriptive marks and suggestive marks, the distinction being that the former may only be protected upon a showing of secondary meaning, while a suggestive mark is protectable on its own. *Gruner*, 991 F.2d at 1076. As the Second Circuit has explained, a suggestive mark "may take imagination to grasp the nature of the product." *Id.* (using the mark ORANGE CRUSH as an example of a suggestive mark when used in connection with an orange-flavored beverage).

The FIRM UP Mark is, at a minimum, suggestive as applied to the goods with which it is associated and thus falls on the strong, protectable side of the distinctiveness spectrum. Like the trademark ORANGE CRUSH for an orange-flavored beverage, the FIRM UP Mark requires some imagination to fully grasp the nature of Diggin' Your Dog's pet supplement. When encountering the FIRM UP Mark in the marketplace, consumers are unable to readily discern what Diggin' Your Dog's product does based on the wording alone. Indeed, a mental step is required to link the FIRM UP Mark with the product's ultimate purpose, unlike descriptive marks which are obvious from

10

the wording alone.  *See id.* (explaining that TRIM for fingernail clippers, FASHIONKNIT for sweaters, and COCO-QUININE for chocolate-flavored quinine are all descriptive marks).

Further, the FIRM UP Mark has acquired distinctiveness from being prominently used in connection with Diggin' Your Dog's pet supplement products for over a decade in interstate commerce.  Diggin' Your Dog's longstanding use and substantial marketing efforts, coupled with the enforcement of its rights against third parties, has created a strong mental association between the FIRM UP Mark and Diggin' Your Dog's high-quality products in the minds of consumers.  For these reasons, Diggin' Your Dog's FIRM UP products are Diggin' Your Dog's top-selling products.

Additionally, the prosecution history of Diggin' Your Dog's federal trademark application provides evidence of the FIRM UP Mark's strength, as the USPTO Examiner did not reject the '650 Application based on genericness or descriptiveness.  (Rodrigues Decl. ¶ 4.)  On the contrary, upon review, the USPTO found the FIRM UP Mark to be sufficiently distinctive such that it warranted trademark protection from the outset.  (Rodrigues Decl. ¶ 4.)  Consequently, the '650 Application is currently scheduled for registration any day now, which will provide the FIRM UP Mark with certain statutory protections and evidentiary presumptions. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection").  Thus, the first *Polaroid* factor weighs strongly in favor of Diggin' Your Dog.

> d.   The Infringing Mark is Identical to the FIRM UP Mark and is Use in Connection with the Same Goods

Defendants adopted an identical trademark—the wording "FIRM UP"—which they chose to use in connection with precisely the same pet supplement product offered by Diggin' Your Dog—a stool-hardening digestive aid for dogs.  The two marks are identical in terms of sight, sound, meaning, and overall commercial impression, and the products which these marks are used in connection with perform the same function and serve the same purpose to consumers.

Defendants' infringing products are clearly designed to imitate those offered by Diggin' Your Dog, without providing the same premium quality that Diggin' Your Dog's customers have grown accustomed to.  *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1004-1005 (2d Cir. 1997) (holding that the test for confusion is "whether they create the same general overall impression such that a consumer who has seen" the authentic product would, when seeing the infringing product, be confused).  Given that the FIRM UP Mark is identical to the Infringing Mark, the second *Polaroid* factor also weighs heavily in Diggin' Your Dog's favor.

e.   Defendants' FIRM UP-Branded Goods Directly Compete with Diggin' Your Dog's FIRM UP-Branded Products

In considering the proximity of the products in the market, the concern is "competitive proximity," meaning "whether and to what extent the two products compete with each other." *Cadbury Beverages Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996).  Inherently, Diggin' Your Dog's pet supplement products and Defendants' products are in competitive proximity because Defendants are offering for sale and/or selling products that are virtually identical in kind (but not quality) to Diggin' Your Dog's products, bearing an infringing mark in the same class of goods under which Diggin' Your Dog sells its well-known pet supplements. Accordingly, there is no "gap" to bridge.  *See Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005) (concluding that "[b]ecause . . [the] products are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis").

Moreover, Diggin' Your Dog's products and Defendants' products are both sold in the same channels of trade—the online retail websites Chewy.com and Amazon.com.  The fact that consumers have purchased Defendants' goods on Amazon.com, only to find that those products made their pets sick, provides definitive evidence that not only are the parties' goods in direct competition, but also that Diggin' Your Dog's goodwill and business reputation is likely to be damaged by consumers mistakenly believing that Diggin' Your Dog is the origin of Defendant's

inferior goods.  Therefore, the third and fourth *Polaroid* factors also weigh in favor of Diggin'
Your Dog's trademark infringement and unfair competition claims.

f.      Actual Consumer Confusion May Be Inferred

Since Defendants are offering for sale and/or selling identical versions of Diggin' Your
Dog's pet supplement products using a mark that is identical and/or confusingly similar to the
FIRM UP Mark, actual confusion can be inferred in this instance. *See Fila U.S.A., Inc. v. Run
Trading Corp.*, No. 95 CIV. 7144 (PKL), 1996 U.S. Dist. LEXIS 6893 (S.D.N.Y. May 21, 1996)
(the Court inferred actual confusion where the defendants' marks were almost identical to the
plaintiffs' marks).  Accordingly, the fifth *Polaroid* factor favors Diggin' Your Dog.

g.      Defendants Acted in Bad Faith

Defendants' choice of mark, which is identical to the FIRM UP Mark and is used in
connection with the offering for sale and/or sale of virtually identical products, strongly suggests
that they intended to wrongly trade off the goodwill and reputation that Diggin' Your Dog has
spent over a decade building in its pet supplement brand.  *See Kraft Gen. Foods, Inc. v. Allied Old
English, Inc.*, 831 F. Supp. 123, 132 (S.D.N.Y. 1993) ("When a company appropriates an identical
mark . . . an inference can be drawn that the company intends to capitalize on the goodwill and
reputation of the mark as well as any confusion that might result concerning the common origin
of that mark and the senior user's product."); *see also Gucci America, Inc. v. Action Activewear,
Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991) (citing *Fleischmann Distilling Corp. v. Maier
Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1963)) ("Where the evidence shows or requires the
inference that another's name was adopted deliberately with a view to obtain some advantage from
the good will, good name, and good trade which another has built up, then the inference of
likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he
expects confusion and resultant profit.").  Moreover, if Defendants' infringing actions are found to

13

be willful, "likelihood of confusion will be presumed as a matter of law." *N.Y. State Soc'y of CPA's v. Eric Louis Assocs.*, 79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999).

In addition, Defendants received actual notice directly from Diggin' Your Dog regarding its trademark rights, and yet, Defendants elected to continue using the Infringing Mark in a deliberate attempt to continue creating consumer confusion to its advantage.  Defendants' actions in this regard are not only patently unfair, but they constitute bad faith as recognized by this Circuit. *See Centaur Commc'ns v. A/S/M Commc'ns*, 830 F.2d 1217, 1222 (2d Cir.1987) ("[A]wareness [of another's mark] can give rise to an inference of bad faith."), *overruled on other grounds by Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir.1993); *see also International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 890 F.3d 749, 754 (2d Cir. 1996) (explaining that filing suit puts a defendant on notice for purposes of bad faith in the trademark infringement analysis) (citing *Stuart v. Collins*, 489 F.Supp. 827, 832 (S.D.N.Y. 1980) (finding willful infringement when defendant continued to use plaintiff's mark after plaintiff's attorney demanded that it cease, thereby giving "short shrift to plaintiff's claim out of arrogance and confidence that he would not mount any significant legal attack"). Therefore, the sixth *Polaroid* factor further supports Diggin' Your Dog.

### h.      Defendants' Goods are of Inferior Quality

Diggin' Your Dog uses top-quality ingredients in the development of its dietary and nutritional pet supplements, which are designed to improve the overall wellbeing of its customers' animals.  In stark contrast, Defendants' own customers claim that their products are of poor quality and are actually ***harming*** pets across the country, making them sick and even reportedly bringing some animals to the brink of death.  Diggin' Your Dog has neither authorized Defendants' use of the FIRM UP Mark nor approved Defendants' inferior products.  Thus, Defendants wrongfully encroached upon Plaintiff's right to control the quality of the goods manufactured and sold under

14

its FIRM UP Mark. *See Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992) ("'One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark . . . the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain.'"). As such, the seventh *Polaroid* factor supports a finding of likelihood of confusion between Plaintiff's premium products and Defendants' inferior goods.

i. The Degree of Consumer Sophistication

"Where the purchasers of a product are highly trained professionals, they know the market and are less likely than untrained consumers to be misled or confused by the similarity of different marks." *Virgin Enters.*, 335 F.3d at 151. On the other hand, ordinary "retail customers," such as the consumers of Diggin' Your Dog's pet supplements, "are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination." *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261, 268-269 (E.D.N.Y. 2011) (internal citations omitted). "Furthermore, retail customers purchasing inexpensive items are expected to exercise less care than retail customers purchasing expensive, luxury goods." *Id*. Here, not only are Diggin' Your Dogs consumers untrained "retail customers," but pet supplements are inherently the type of inexpensive purchase that does not warrant a high degree of care when selecting such good in the marketplace. Accordingly, the final *Polaroid* factor also weighs in favor of Diggin' Your Dog.

**2.   Defendants Acted Willfully**

Although Diggin' Your Dog need not prove willful infringement to prevail on its claims, a defendant's willfulness is relevant to both damages and attorney's fees (which Diggin' Your Dog will seek by subsequent motion). Since Defendants failed to appear in this action, no further analysis is required into willfulness because, and axiomatically, infringement is deemed willful

15

"[b]y virtue of the default[.]" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Nevertheless, Defendants unequivocally engaged in willful infringement for the following reasons.

The standard for willfulness "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993). When dealing with intellectual property, such knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly. *See N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding that for "the purpose of awarding enhanced statutory damages," the knowledge component of willfulness "need not be proven directly but may be inferred from the defendant's conduct.").

First, and as already noted, Defendants' products bear a mark that is identical to the FIRM UP Mark. *See Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842, at *12-13 (S.D.N.Y. Sep. 2, 2011) ("Because the marks used by defendants on their products are virtually identical to the Coach Registered Trademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is intentional."). By using an identical mark for identical goods, Defendants' willful infringement may be inferred through its conduct.

Second, and more importantly, Defendants had actual knowledge of Diggin' Your Dog's trademark rights, and yet chose to continue using the Infringing Mark knowing full well the danger in doing so. As detailed above, Defendants received two cease and desist letters from Diggin' Your Dog prior to the commencement of this action, which were later acknowledged by Defendants' counsel after the suit was filed. Where a defendant receives such a letter placing it on notice from an early date, any subsequent use of the mark may be deemed willful infringement. *Stuart*, 489 F. Supp. at 832. Thus, the uncontradicted evidence demonstrates that Defendants unequivocally engaged in willful trademark infringement.

16

### B.   DIGGIN' YOUR DOG IS ENTITLED TO JUDGMENT ON ITS STATE LAW CLAIMS

The same analysis that applies to Diggin' Your Dog's federal trademark infringement and unfair competition claims also applies to its claims under New York common law.  *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 70 U.S.P.Q. 1592, 2004 WL 896952, *7 (E.D.N.Y. 2004) ("The same analysis is used for common law trademark infringement and unfair competition cases as is used under federal law. . .  Since Plaintiff has established infringement and unfair competition claims under the Lanham Act, it has necessarily also done so under common law.") (citing *Baker v. Parris*, 777 F.Supp. 299, 304 (S.D.N.Y.1991) and *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir.1995)).  The only difference between the two frameworks relates to unfair competition—under New York common law, bad faith is an element, as opposed to the federal analysis where it is merely a factor.  *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 538, 101 U.S.P.Q.2d 1487 (S.D.N.Y. 2011) *aff'd*, 511 Fed. Appx. 81 (2d Cir. 2013) ("The only additional element that must be shown to establish a claim for unfair competition under the common law [of New York] is bad faith.").

Having already addressed each and every element above, including bad faith, for both trademark infringement and unfair competition, Diggin' Your Dog respectfully submits that it is entitled to judgment on its state law claims under New York common law.

Similarly, as to Diggin' Your Dog's claim under New York General Business Laws § 133, § 349(h), and § 360-l, all of the elements of these causes of action have also already been addressed above.  That is, Defendants' actions are likely to injure Diggin' Your Dog's business reputation, the Infringing Mark is being used with the intent to deceive or mislead the public, and ultimately, Defendants' use of the Infringing mark amounts to infringement of Diggin' Your Dog's FIRM UP Mark.  N.Y. Gen. Bus. Law §§ 133, 349(h), and 360-l.  As such, Diggin' Your Dog is entitled to the remedies available under the New York General Business Law, including an injunction to

restrain the deceptive and misleading activity, an award of Diggin' Your Dog's damages, and attorneys' fees and costs.  *See* N.Y. Gen. Bus. Law §§ 133 (authorizing injunctive relief), 349(h) (providing for injunctive relief, damages, and attorneys' fees), 360-l (granting injunctive relief). Accordingly, Diggin' Your Dog submits that it is entitled to judgment on its New York statutory claims.

### C.    DIGGIN' YOUR DOG IS ENTITLED TO A PERMANENT INJUNCTION

Diggin' Your Dog respectfully requests that the Court permanently enjoin Defendants from any further infringement of the FIRM UP Mark and from engaging in any further unfair competition.  An injunction is warranted both under longstanding principles and recently enacted federal legislation.  Courts have long had the authority to grant a permanent injunction under the Lanham Act on a motion for default judgment.  *See, e.g., Harris v. Fairweather*, 11-cv-2152 (PKC) (AJP), 2012 U.S. Dist. LEXIS 128409, at *38-40 (S.D.N.Y. Sep. 10, 2012).  In Lanham Act cases, many circuits have traditionally followed the four-factor test set forth in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), which held that a permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391.  Additionally, following enactment of the Trademark Modernization Act ("TMA"), which became effective December 18, 2021, Diggin' Your Dog is entitled to a rebuttable presumption of irreparable harm for purposes of entering an injunction such that a permanent injunction should issue.  15 U.S.C. § 1116(a).

Although enactment of the TMA means that the *eBay* factors likely need not be addressed here, Diggin' Your Dog nonetheless satisfies the factors.  As the TMA implicitly recognizes and

courts have long held, violation of a party's trademark rights results in irreparable injury for which no adequate remedy at law exists.  *See, e.g., Artemide Inc. v. Spero Elec. Corp.*, 09-cv-1110 (DRH) (ARL), 2010 U.S. Dist. LEXIS 136870 at *9 (E.D.N.Y. Nov. 23, 2010) (finding irreparable harm where likelihood of confusion as to source and likelihood of injury to reputation were shown); *U.S. Polo,* 800 F. Supp. 2d at 541 (finding that a remedy at law was not adequate "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable.").[1]  Given such injury to Diggin' Your Dog's goodwill and reputation, as well as the absence in the record of any assurance against Defendants' continued infringement of the FIRM UP Mark, monetary damages alone are inadequate to compensate Plaintiff for the damage it has incurred and will continue to incur if an injunction is not entered.

Further, the balance of hardships unquestionably and overwhelmingly favors Diggin' Your Dog since it has suffered and will continue to suffer irreparable harm to its business, profits, goodwill and reputation as a result of Defendants' intentional infringement.  Conversely, Defendants are free to adopt any other trademark that does not create a likelihood of consumer confusion with the FIRM UP Mark, and thus, any hardship imposed on Defendants is negligible.

Finally, the public interest is served by a permanent injunction, as "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."  *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (enjoining defendant from further trademark violations).

---

[1] The inadequacy of monetary relief is compounded when a defendant fails to appear.  *See, e.g., n Educ., Inc. v. Vegara*, No. 09 Civ. 6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597, at *12 (S.D.N.Y. Sept. 27, 2010) (i (i (internal citations omitted) (holding that when a default judgment is entered, "[a] court may infer from a defendant's default that it is willing to, or may continue its infringement"); *Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010) (a showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation" of a plaintiff's rights).

Here, the consuming public should be able to rely on the source-identifying function that the FIRM

UP Mark serves.  Consumers should be assured that the top-quality products they have come to

associate with the FIRM UP Mark are, in fact, Diggin' Your Dog's products and originate from

that source.

On balance, the presumption of irreparable harm applicable to Diggin' Your Dog under

Section 34(a) of the Lanham Act, as amended, and *eBay*'s four-factor test each warrants entry of a

permanent injunction here.

### D.   DIGGIN' YOUR DOG IS ENTITLED TO RECOVER DEFENDANTS' PROFITS

#### 1.   A Defendant's Default Alone Is Justifies A Trebled Profit Award

The Lanham Act authorizes several forms of monetary recovery for trademark

infringement, including the recovery of an infringer's profits. 15 U.S.C. § 1117(a).  Indeed, the

Supreme Court recently decided in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492 (2020)

that disgorgement of profits is available under the Lanham Act regardless of willfulness, because,

inter alia, an award of the infringer's profits serves to compensate the plaintiff for the injuries it

suffered as a result of the defendant's infringement. [2]  *See* 15 U.S.C. § 1117(a) (stating that an

award under the statute "shall constitute compensation and not a penalty"); *Lyons P'Ship, L.P. v.*

*AAA Entm't Inc.,* 1999 WL 1095608, *10 (S.D.N.Y. Dec. 3, 1999).  Profits are "normally

available" under particular circumstances such as where the "defendant is unjustly enriched," or

---

[2] A court may still use "principles of equity" in deciding whether to award profits, such as the degree of certainty that the defendant benefited from the unlawful conduct, the availability and adequacy of other remedies and the role of a particular defendant in effectuating the infringement, plaintiff's laches and plaintiff's unclean hands.  *Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17CIV1927PAEGWG, 2020 WL 3564485, at *6 (S.D.N.Y. July 1, 2020).

"the accounting is necessary to deter a willful infringer from doing so again." *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) (internal citation omitted).

Where a plaintiff shows an entitlement to profits, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); *accord Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990).[3]  That is, a "plaintiff that has proved the amount of infringing sales" is "entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it." *Honda*, 918 F.2d at 1063.  The profits award may be trebled "according to the circumstances of the case." 15 U.S.C. § 1117(a).  A defendant's default "sufficiently establishes that Defendants' conduct was intentional," meriting trebled damages.  *Melwani v. Nature Republic Int'l LLC*, No. 17CV7452LGSKHP, 2019 WL 1582087, at *4 (S.D.N.Y. Mar. 27, 2019); *see also Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 162 (E.D.N.Y. 2013) (holding that once defendant defaults, plaintiff's allegations regarding bad faith are accepted as true, particularly where there is "exceptional similarity of the marks and the lack of any evident justification for the choice of the similar name").

### 2.    A Defendant's Admission Of Sales Figures Suffices To Calculate A Profit Award

In determining the amount of profits, if "the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's . . . failure to produce documentary evidence." *Aris Isotoner Inc. v. Dong Jin Trading Co.,* No. 87 CIV. 890(RO), 1989 WL 236526, *17 (S.D.N.Y. Sept.14,

---

[3] This principle dates back to a decision by the Supreme Court holding that the burden would be on defendant to establish any proper cost to deduct from the entire stream as well as to identify any element of profit that was intrinsic to the product itself and not to the use of the trade name. *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 2 51, 262 (1916); *see also Basch,* 968 F.2d at 1539.

1989); *see also Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966, 972 (2d Cir.1985);

*Century 21 Real Estate LLC v. Paramount Home Sales, Inc.,* No. 06-cv-2861 (FB) (JMA), 2007

WL 2403397, at *4 (E.D.N.Y. Aug. 20, 2007) (finding plaintiff's "speculative" method of

calculating an award "reasonable and appropriate" because "[t]he amount requested is not

excessive and it is defendants who are to blame for the inability to calculate an exact figure").  In

other words, there must be "some reasonable basis for the computation" even though it "may only

be approximate." *Chloe v. Zarafshan*, No. 1:06 CIV. 3140 RJHMH, 2009 WL 2956827, at *5

(S.D.N.Y. Sept. 15, 2009).

A defendant's admission may be used for the calculation, and the defendant need only admit

sufficient facts to calculate an award.  *Louis Vuitton.*, 765 F.2d at 973 ("Plaintiff here proved

defendants' sales, using defendants' own words.").   The form of the admission is of no

consequence.  Consequently, the Second Circuit has upheld a district court's use of the defendant's

oral admission on a covertly recorded videotape regarding the number of sales to calculate profits.

*Id.*  Consistent with these principles, courts in this judicial district have found an appropriate basis

on which to award profits using a variety of creative means to reach a reasonable figure, including

in the context of default judgments.[4]

---

[4] These means include: (1) combining the estimated annual salary of a defendant with indirect evidence of approximate licensing fees (*Experience Hendrix, L.L.C.*, 2020 WL 3564485, at *6-7 ("[W]e believe that plaintiffs' submissions are sufficient to allow us to find that Hendrix's salary must represent an amount earned by him as a result of the gross sales of goods infringing on plaintiffs' trademarks.")); (2) using a combination of various invoices, average sales prices and estimates of time (*Aris Isotoner*, 1989 WL 236526, at *6–7 (awarding profits when it was "impossible to calculate the exact amount of . . . sales," relying in part on the rule that "when the defendant fails to provide satisfactory evidence of its actual sales, the court may rely on indirect or circumstantial evidence"); (3) allowing plaintiff to claim all revenue (reflected in bank statements) from store sales despite that the "records offer no guidance as to how much of this revenue stream related to Chloé products (as opposed to other products not at issue in this case),"

### 3.    An Award Of $448,000, Trebled to $1,344,000, Is Appropriate Here

There is no question that Diggin' Your Dog is entitled to an award of Defendants' profits. Defendants have been unjustly enriched and benefitted from their unlawful conduct because they have profited from sales of their products bearing the FIRM UP mark.  It cannot be overstated that Defendants chose to use an identical mark to Diggin' Your Dog's FIRM UP mark in connection with identical products sold through the same channels.  Additionally, Diggin' Your Dog promptly sought to enforce its rights upon discovering the infringement.  Under the circumstances, it is not enough to enter an injunction.  Defendants and their counsel have been aware of this lawsuit, the entries of default against both, and these default proceedings, but have nonetheless affirmatively refused to appear and/or participate in this case.  Defendants' conduct has been willful, underscoring the need to award profits as a deterrent and meriting a treble damages award.

Defendants' admission through counsel regarding the number of sales for the infringing product provides the Court with an adequate basis to calculate an appropriate award.  Defendants admitted to selling 8,000 units of the infringing product as of December 1, 2022, and is likely to have sold thousands more since that time.[5]  Diggin' Your Dog understands that the infringement

---

as to the "costs incurred in acquiring and selling these products," or what "portion of Zar's profits for the sale of counterfeit Chloé products is attributable to the trademark, as distinguished from the product itself."  *Chloe*, 2009 WL 2956827, at *6; and (4) using third-party evidence of remaining counterfeit inventory to approximate total sales value (*Phat Fashions LLC v. Blue Max Corp.*, No. 01 CIV.3933 KMW RLE, 2005 WL 1221838, at *2 (S.D.N.Y. May 2, 2005) ("In the absence of any information from Blue Max on costs, and because Blue Max has not cooperated in discovery, the Court finds that these estimated sales are a fair indicator of profits.")).

[5] Although the substance of settlement negotiations is generally inadmissible, "there is a 'well-recognized exception regarding admissions of fact as distinguished from hypothetical or provisional concessions conditioned upon the settlement's completion." *Hiram Ricker & Sons v. Students Int'l Meditation Soc.*, 501 F.2d 550, 553 (1st Cir. 1974); *see also Gabriel Brothers, Inc. v. Effy Jewelers Corp.*, No. 18 Civ 7289, 2019 WL 1512800, at *2 (S.D.N.Y. Apr. 8, 2019) ("[C]ourts in this Circuit ... have rejected the argument that publicly available or otherwise discoverable evidence exchanged during settlement negotiations is inadmissible at trial."); *see*

began in June 2021, which translates to approximately 1,600 sales per month since the infringing product was launched. As explained above, counsel's later attempt to disavow the 8,000 unit figure is not credible under the circumstances. The benefit of the doubt afforded by law in Diggin' Your Dog's favor merits a finding that the original 8,000 figure was accurate.

Defendants should therefore be held accountable for $448,000 in profits, calculated according to their admission of an average 1,600 sales per month for the last eight months (*i.e.* 12,800 units), at $35.00 per unit. *Chloe*, 2009 WL 2956827, at *6 (using total income figure as measure of profits on default judgment). Defendants' deliberate failure to appear has made it impossible to arrive at a more precise figure, and in conjunction with the circumstances demonstrating their intentional infringement of Diggin' Your Dog's FIRM UP Mark, merits trebling the award to $1,344,000.

## VI.   **CONCLUSION**

Defendants' willful infringement of the FIRM UP Mark has irreparably harmed, and continues to harm, Diggin' Your Dog. Defendants have refused to appear to defend this lawsuit, and therefore, Diggin' Your Dog respectfully requests:

1.      That the Court issue an order holding that Defendants are willfully infringing the FIRM UP Mark in violation of the Lanham Act and New York common law, and are engaged in false advertising and unfair competition in violation of the Lanham Act and New York common law, and otherwise have been unjustly enriched to Diggin' Your Dog's detriment.

---

*also IBM v. BGC Partners, Inc.*, No. 10 Civ 128, 2013 WL 1775367, at *6 n.6 (S.D.N.Y. Apr. 25, 2013) ("Rule 408 'does not require the exclusion of any evidence that is otherwise discoverable merely because the evidence is revealed during negotiations'") (quoting 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.07 (2d ed. 2008)).

2.      Entry of a permanent injunction enjoining and restraining Defendants, their officers, agents, servants, employees, and all persons acting in concert or participation with Defendants, from:

      a.      using the Infringing Mark, or any confusingly similar variations thereof, or any other marks that infringe the FIRM UP Mark, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any purpose whatsoever (including, but not limited to, on websites, in domain names, in hidden text and metatags);

      b.      engaging in any false and/or misleading marketing or promotion that misrepresents the relationship between Diggin' Your Dog and Defendants; and

      c.      engaging in any acts of unfair competition against Diggin' Your Dog.

3.      That Diggin' Your Dog be awarded Defendants' profits in the amount of $448,000, trebled to $1,344,000 under 15 U.S.C. § 1117(a);

4.      That Defendants be adjudged to have engaged in deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

5.      That Defendants be adjudged to have injured Plaintiff's business reputation in violation of N.Y. Gen. Bus. Law § 360-l.

6.      That Defendants be adjudged to have used the Infringing Mark with the intent to deceive the public in violation of N.Y. Gen. Bus. Law § 133.

7.      That Diggin' Your Dog be awarded its reasonable attorneys' fees and costs of suit under the Lanham Act and any other applicable law (to be sought by subsequent motion).

8.      That Diggin' Your Dog be awarded prejudgment and post-judgment interest on any monetary award at the highest allowable legal rates.

For the foregoing reasons, Diggin' Your Dog respectfully requests that the Court grant its Motion for Default Judgment and a Permanent Injunction in its entirety.

Dated: February 10, 2022

s/ Cameron S. Reuber
Cameron S. Reuber (CR 7001)
Peter S. Sloane (PS 7204)
Stefanie M. Garibyan (SL 6170)
LEASON ELLIS LLP
One Barker Avenue
White Plains, NY 10601
T.914.821.9077
F.914.288.0023
sloane@leasonellis.com
reuber@leasonellis.com
garibyan@leasonellis.com
lelitdocketing@leasonellis.com

Airina L. Rodrigues (AR 6551)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202
arodrigues@bhfs.com

*Attorneys for Plaintiff Diggin' Your Dog, Inc.*